IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEXINGTON HEALTHCARE CENTER OF BLOOMINGDALE, INC. *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> MORRISON MANAGEMENT SPECIALISTS, INC. <br><br> Defendant. | Case No.: 20-cv-01949 <br><br> Hon. Robert W. Gettleman <br><br> JURY TRIAL DEMANDED |

**DECLARATION OF FRED BENJAMIN
IN SUPPORT OF MOTION FOR TRO OR PRELIMINARY INJUNCTION**

I, Fred Benjamin, declare as follows:

1. I am over 21 years of age and have personal knowledge of the matters set forth in this Declaration.

2. I am the Chief Operating Officer of Lexington Health Network. In that role, I directly participate in overseeing the key operations of Lexington Health Network. Lexington Health Network has operated healthcare centers and nursing homes in the Chicagoland area since 1984.

3. I have been one of the primary liaisons with the Defendant in this case, and am intimately familiar with the following: Lexington's retention of Morrison Living to provide food, cleaning, laundry and housekeeping services at Lexington facilities pursuant to the Agreement between the parties, effective June 1, 2019; Morrison's failure to perform these services; Morrison's material breaches of the Agreement; Lexington's recent ninety-day notice of termination, provided to Morrison on March 11, 2020; and Morrison's response, an alleged seven-day termination notice provided to Lexington on March 17, 2020.

-1-

4. I submit this Declaration to: (A) verify the factual allegations in the Complaint in this lawsuit; (B) provide detail regarding our offer to compensate Morrison during the termination period; and (C) describe the harm to Lexington that would occur if Morrison breaches the Agreement and walks away before the end of the termination period.

**A. Verification of Complaint**

5. I have read the Complaint and factual allegations in this lawsuit, and have knowledge as to the factual allegations.

6. I verify all of the factual allegations in the complaint, and incorporate them into this Declaration.

7. To the best of my knowledge, the documents affixed to the Complaint as exhibits are true and correct copies of those documents.

**B. Lexington's Efforts to Compensate Morrison During the Termination Period**

8. Upon our termination and 90-day notice, Morrison expressed concern about getting paid for its Services during the 90-day termination period.

9. As a result, we offered (and still are offering) to compensate Morrison for its Services during the termination period as follows:

   a. Morrison can liquidate approximately $1.4 million from a working capital account that was supposed to be returned to Lexington at the termination.

   b. $750,000 (by checks) on March 26, 2020. In good faith, we made the checks available on March 25, 2020.

   c. $1,000,000 (by check) on April 9, 2020.

   d. $1,600,000 (by check) on May 8, 2020.

   e. $2,550,000 on June 9, 2020, as follows:

      i. $1,850,000 (by check), which represents a payment for Services, and also a repayment of a $250,000 PTO loan.

      ii. $700,000 to an escrow account to be released once the Parties reach agreement on the final amounts and terms due to Morrison.

10. Lexington Health Network has so far paid millions of dollars to Morrison Living under the Agreement.

11. I have reviewed an A/R aging report Morrison has presented as representative of the amounts it claims it is owed. The amount Morrison claims is currently owed has been disputed by Lexington. I have had several conversations with Barbara Conn and others at Morrison Living, and they have been fully aware that this amount has been disputed.

12. For all of the amounts, Morrison has ignored our requests for further information and/or we have identified calculation errors and possible unapproved expenses.

13. Along with other representatives of Lexington Health Network, I have personally spoken with and am aware of communications with Morrison Living representatives—including without limitation Barbara Conn, Scott MacLellan, and Travis Young—about Morrison's significant overcharging of Lexington, and I attempted to work with Morrison resolve this issue. For months, Morrison has been on notice of this issue and for months, Morrison has failed to provide a remedy.

14. For other payments, Morrison Living has refused to provide requested direct supplier invoices and receipts to Lexington Health Network and has demanded payment without providing information with the necessary detail.

15. Along with other representatives of Lexington Health Network, I have personally spoken with and am aware of communications with Morrison Living representatives—including

without limitation Barbara Conn, Scott MacLellan, and Travis Young—and requested that Morrison provide invoices and receipts. For months, Morrison has been on notice of our request and for months, Morrison has refused to provide invoices and receipts.

16. Lexington Health Network reasonably disputes the invoices in which Morrison overcharged Lexington and the payments for which Morrison has refused to provide backup information with the necessary detail.

17. By March 2020, Morrison Living has been more than aware of the issues above, and by March 2020, there was no feasible way for Morrison Living to cure its breaches.

18. Lexington Health Network considered terminating the Agreement for cause under Article 3.2. As a professional courtesy, however, Lexington terminated the Agreement on March 11, 2020 under Article 3.1(ii), which permits terminations for convenience or without cause if two conditions are met: (1) 90 days' notice is provided; and (2) the effective date of the Agreement is 1 year-old.

19. Lexington is making the termination effective June 9, 2020, 90 days after the termination notice and more than one year after the Effective Date of June 1, 2019.

20. After Lexington sent the 90-day termination notice on March 11, 2020, we received a response from Morrison Living on March 17, 2020. In its response, Morrison provided a 7-day termination notice, demanding payment of invoices discussed above, which Lexington Health Network reasonably disputes.

21. Morrison issued a letter to its employees dated March 12, 2020, in which Morrison admitted that the Parties' Contract was valid through June 9, 2020. *See* Ex. A.

**C. Lexington Faces Irreparable Harm Due to Morrison's Bad Faith Termination Notice**

22. Lexington Health Network has identified a replacement vendor that is unable to start until June 1, 2020.

23. The transition time is partially due to the size of Lexington's operation. Morrison provides food and cleaning services to over ten Lexington facilities and Lexington provides cares for over 1,600 residents. A transition of this size cannot be effectuated in a matter of days or weeks, but rather takes several months. It ensures that Lexington's residents – who are primarily senior citizens – are taken care of.

24. The transition time is also partially due to the current Coronavirus crisis. Lexington is on the front lines of the fight against Coronavirus, providing essential services to over 1,600 senior citizens in the Chicagoland area. In addition, Lexington is a strategic partner with several of Chicagoland's largest health systems in the continuum of care serving very ill patients. These 1,600 residents are among Chicago's most vulnerable population and Lexington has taken increased precautions to care for its residents in this dangerous time.

25. Given Morrison's pattern of incurable breaches, it is not ideal to have Morrison continue to provide services. Lexington wishes to transition to another service provider as soon as possible. Practically, the soonest that Lexington can effectuate a safe transition for its residents is June 1, 2020.

26. The safety and welfare of Lexington's residents is of paramount importance. To that end, Lexington has reached out to Morrison repeatedly since March 11, 2020. Lexington has offered to generously compensate Morrison for the 90-day transition period.

27. Morrison Living has told us that if they remained until June 9, 2020, their total costs would be approximately $5.6 million.

Executed this 25th day of March 2020, at Lombard, Illinois

_____
**Fred Benjamin, COO**
**Lexington Health Network**



March 12, 2020

*Via Hand Delivery*

**Re: WARN Act Notice of Layoff Due to Loss of Contract at Your Account**

Dear MONICA ENESCU:

We regret to inform you that Lexington Health Network has decided to discontinue its contract for services with Morrison Living ("the Company") at the account where you work. As a result of this decision, Morrison's entire operation at this location will close and you are being laid off. This notice, which is issued in accordance with the Worker Adjustment and Retraining Notification ("WARN") Act, is to inform you of this layoff and answer any questions you might have about this lay off. Please note the information provided below represents the best information available to the Company at this time.

- *Is my layoff going to be permanent or can I expect to be recalled to employment at some time in the future?*

At this time, you should consider your layoff to be permanent. There is no indication that the Company will be awarded a foodservice contract at this location any time in the future.

- *When will the layoffs begin and when am I likely to be laid off?*

Company expects Associate layoffs to be June 9, 2020.

- *Additional Information Regarding Benefits*

**Unemployment Compensation:** Because this job elimination is involuntary, so long as you remain in good employment standing through your termination date, you may be eligible for unemployment benefits pursuant to your state unemployment guidelines. You should apply to receive this at the nearest state agency. The company makes contributions to support the program in this state and we encourage you to apply to receive this benefit.

Please be advised there are no bumping rights available to you. Please keep in mind that between now and your separation date you are required to follow the employment policies and guidelines established. Failure to do so could result in a termination on your part prior to the layoff date.



March 12, 2020

While we regret to inform you of this news, we thank you for your dedication and hard work. We wish you best in your future endeavors. Should you have any questions, please contact Steve Michaels, HR Manager at 612-406-0508.

Regards,

Morrison Community Living

*Adrienne Williams*

Adrienne Williams, VP Inclusion & Human Resources, Human Resources